JOHN KING, JR.,

*v.*

NATHANIEL P. WILDER *et al.*

TRUST — *bill to declare trust in nature of mortgage, and for redemption — laches.* In 1846 A and B were the owners of certain lots, but the legal title was in B, who held the undivided half in trust for A, which he had obligated himself to convey upon payment of $1,000, which A owed him. Several years afterward, in 1850, B and A had a settlement of their transactions, and B relieved A of his agency in respect to the lots, and appointed another agent to sell them, which fact was known to A. In 1851 B sold the lots to C, who had no notice of A's rights, the agreement between A and B never having been recorded, and C sold half of the lots to D, and they improved the lots and erected residences thereon, all of which was known to A, who gave them no notice of his claim, or pretended to have any interest in the property. More than twenty years after the purchase by C and D, A filed his bill to redeem the lots and for an account of the rents and profits, which, on a hearing, was dismissed: *Held,* that the bill was properly dismissed and that A's *laches* was inexcusable.

276 KING *v.* WILDER *et al.* [Sept. T.

Opinion of the Court.

APPEAL from the Circuit Court of Cook county; the Hon. WILLIAM W. FARWELL, Judge, presiding.

Mr. J. P. ATWOOD, and Mr. JOHN WOODBRIDGE, for the appellant.

Messrs. ELDRIDGE & TOURTELLOTTE, for the appellees.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This is an appeal from a decree of the Circuit Court of Cook county, in a case on the equity side thereof, wherein John King, Jr., was complainant, and Nathaniel P. Wilder, John B. Drake, and others named therein, were defendants. The scope of the bill was, to be allowed to redeem the undivided half of certain lots in Chicago, and for a decree requiring the defendants to convey to complainant all their right, title and interest of, in and to the same, and to account for the rents and profits thereof, and that they be applied *pro tanto* in payment of complainant's debt and interest thereon, and the surplus be paid to complainant.

There were answers to the various allegations of the bill by Wilder and Drake, the principal parties in interest, and replications filed.

Much testimony was taken, chiefly that of the parties, and the cause heard on pleadings and proofs, which resulted in a decree dismissing the bill for want of equity, and complainant appeals.

To determine this question, the allegations of the bill of complaint and the proofs in support thereof are to be examined and weighed. We have done so; we have fully examined the record in these respects, and find that in June, 1839, appellant became the purchaser from the United States of the lots in question, they constituting a part of Fort Dearborn addition to Chicago, laid off and sold by the United States; that the certificate of purchase issued to one John Moore, of Warren, in the State of Massachusetts; that appellant sold to one Nathan Richardson one undivided half of the property, he paying there-

for one-half of the original purchase money; that Moore conveyed the entire property to Richardson at the request of appellant; that Moore obtained the patent for the lots in January, 1841, in his own name; that Moore, on request of appellant, conveyed the property to Richardson; that sealed agreements, having reference to this property, were made by and between appellant and Richardson, stipulating for the payment of certain moneys by the former to the latter for an interest in the property, and which were not performed by appellant; that on the 1st of January, 1851, Richardson sold the premises to Nathaniel P. Wilder for fifty-three hundred dollars, whereupon Wilder went into possession of the lots, erected a fence around them, ploughed the ground, holding the plough himself, and cultivated the land, and in the spring following sold and conveyed the west half of the property to one S. Lockwood Brown, who, with Wilder, in the same year, erected, each of them, a building thereon for residence, and occupied the same, Wilder up to the hearing of the cause, and Brown up to 1861; that Richardson came to Chicago in June, 1850, and there saw appellant, who was a constant resident of that place, and then and there had a settlement with appellant in regard to their business transactions; and there gave to Richardson his promissory note for one hundred dollars due him; and gave to Richardson a receipt for eighty-seven dollars and fifty cents for all taxes and sidewalk assessments, and for his services as agent in attending to his lots in Chicago, being the lots in question, they being all and the only lots Richardson had in Chicago; that at the same time Richardson relieved appellant of his agency, and appointed a Mr. Stowell in his place; that appellant knew of this appointment, and knew that Stowell was agent for Richardson to sell these lots; that from that day to the final decree in the cause, being more than twenty years, appellant had nothing to do with this property; never occupied it in any way, or pretended to control it in any manner; that appellant knew Wilder had bought the property of Richardson

at or about the time he did buy it; knew that Wilder had built a house upon it, and was occupying it, and did not in any manner inform or notify Wilder that he had any interest in the premises; and during all this time there was nothing on record anywhere going to show title or claim existing in appellant, legal or equitable; that Wilder, before he purchased, procured an abstract of title, which, being examined by a competent attorney, was adjudged satisfactory.

We find these to be the leading facts. Appellant bases his rights mainly on the agreement between himself and Richardson of September 21, 1846, and which appellant had assigned to Moore. At that date the title to all this property was absolute in Richardson, by a conveyance to him by Moore, the patentee. All prior agreements respecting this property merged in that of September 21, and by that contract, if the money stipulated to be paid by appellant was not paid, the title was to remain as it then was, namely, in Richardson. We find that Richardson purchased of Moore, without notice of any defeasance existing in appellant, and, by a clear preponderance of evidence, Wilder purchased of Richardson without any notice of any infirmity in the title, or that appellant had a claim, legal or equitable, to the property, or to any portion thereof. We find further, there was great laches on the part of appellant in asserting his claim, having had abundant opportunity to do so years ago. Under the circumstances developed by the testimony his laches was wholly inexcusable. There is nothing in the testimony to show that appellant occupies, or should occupy, the position of a mortgagor, and at this late day claim the right to redeem.

The decree of the circuit court dismissing the bill is affirmed.

*Decree affirmed.*